IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

THERESA B.,

                      Plaintiff,

          v.                                    Civil Action No.
                                                3:20-CV-0985 (DEP)


KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                      Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          RONALD W. MAKAWA, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]      Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in October of 1974, and is currently forty-seven years of age.  She was thirty-seven years old at the time of the determination on her prior application – March 6, 2012 - and forty years old at the time of her current application for benefits in January 2015.  Plaintiff stands five-foot and eight inches in height, and weighed between approximately two hundred and two hundred and fourteen pounds during

---

[2]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

the relevant time period.  Plaintiff lives in a house with her mother-in-law and her five minor children.

In terms of education, plaintiff is a high school graduate and did not receive any special education services while in school.  She worked for many years at Verizon, and most recently was employed at Big Lots stocking shelves and unloading trucks.  Her job at Big Lots ended because she called in sick due to anxiety and chest pain three days in a row.

Mentally, plaintiff alleges that she suffers from anxiety, depression, posttraumatic stress disorder ("PTSD"), and panic attacks.[3]  She has received mental health treatment consisting primarily of medication. Plaintiff has not been hospitalized for psychiatric issues, although she has received emergency room treatment related to panic attacks in the past. During the relevant period, plaintiff treated for her mental conditions with Dr. John Welch, D.O., and Dr. Tayyebeh Borogerdi, FNP, at Lourdes Vestal Family Practice, and was also assessed by licensed clinical social worker ("LCSW") Kathleen DiFulvio-Kaepplinger and Dr. Adam Krantweiss, Ph.D.  as part of her mental health treatment.

Plaintiff has reported that she experiences panic attacks three-to-five

---

[3]     In addition to her mental impairments, plaintiff suffers from various physical conditions.  Those physical impairments, however, are not at issue in this proceeding.

times per week that last anywhere from minutes to hours, as well as other anxiety symptoms such as nervousness, dizziness, shaking and paranoia that something bad is going to happen.  Her anxiety and panic attacks are triggered by driving, going over train tracks, showering alone, having chest pain, and going to the store.  Plaintiff takes medications for her mental impairments, and one of them makes her tired enough that she does not want to do anything.  Her mother-in-law and children do the majority of the housework and chores, although she does cook.  Plaintiff leaves her home typically three times per week and tries to do everything she needs while she is out so she will not have to leave again.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on January 27, 2015.  In support of those applications, she alleged a disability onset date of February 10, 2009,[4] and claimed to be disabled based on panic attacks, depression, anxiety, PTSD, and gastroesophageal reflux disease.

A hearing was conducted on June 20, 2017, by ALJ Bruce S. Fein, to

---

[4]     Plaintiff had a prior application that was denied on March 6, 2012, thereby making March 7, 2012, the earliest date on which she can be found disabled based on her current applications.  Administrative Transcript, Dkt. No. 10 ("AT") at 16.

address plaintiff's applications for benefits.  ALJ Fein issued an unfavorable

decision on August 15, 2017.  That opinion became a final determination of

the agency on August 31, 2018, when the Social Security Appeals Council

("Appeals Council") denied plaintiff's request for review of the ALJ's

decision.

Plaintiff subsequently appealed that decision to this court.  On

November 1, 2019, I remanded this matter back to the Agency for further

proceedings.  The Appeals Council effectuated that remand back to the

ALJ on January 15, 2020.

ALJ Fein held another hearing on June 9, 2020, during which limited

testimony was elicited from plaintiff as well as from both medical expert Dr.

Jewel Brennan and a vocational expert.  ALJ Fein then issued an

unfavorable decision on June 22, 2020.   After foregoing a request for

review by the Appeals Council, plaintiff once again appealed to this court.

B.    The ALJ's Decision

In his decision, ALJ Fein applied the familiar, five-step sequential test

for determining disability.  At step one, he found that plaintiff had not

engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Fein found that plaintiff suffers from severe

impairments that impose more than minimal limitations on her ability to

perform basic work functions, including an anxiety disorder and PTSD.

At step three, ALJ Fein examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 12.06 and 12.15.

ALJ Fein next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following limitations:

> [the claimant is] capable of simple, routine, and repetitive tasks with no production rate or pace work. The claimant is capable of low stress jobs, defined as occasional decision-making being required, occasional changes in the work setting, and occasional judgment required on the job. She can have occasional interaction with the public, coworkers, and supervisors.

At step four, ALJ Fein concluded that plaintiff can perform her past relevant work as a laborer. Based upon these findings, ALJ Fein found that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on August 25, 2020.[5]  In support of

---

[5]   This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18.

her challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ substituted his lay judgment for the undisputed medical opinions of record indicating that plaintiff is unable to perform work at an acceptable pace and with acceptable attendance, in some respects making the same errors he committed in his previous decision despite the court's remand order, (2) the ALJ erred in rejecting the opinions from the medical expert Dr. Brennan and examining physician Dr. Adam Krantweiss, (3) the ALJ erred in relying on state agency non-examining physician Dr. Harding's opinion because it was not actually an opinion, (4) the ALJ failed to reconcile affording great weight to the opinion of consultative examiner Dr. Amanda Slowik with failing to adopt her marked limitation in a relevant area, and (5) the ALJ's reliance on her activities of daily living to find she is not disabled was improper because her activities were not performed at the degree and frequency required to show she can perform sustained full time work and are insufficient to outweigh all of the medical opinion evidence showing she has problems with functioning on a sustained basis.  Dkt. No. 18.

Defendant asserts many arguments contrary to plaintiff's contentions,

---

Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

but ultimately concedes that the ALJ failed to properly weigh the opinion from Dr. Brennan and therefore agrees that remand is necessary.  Dkt. No. 23.  However, the Commissioner maintains that any remand should be for further proceedings rather than with a directed finding of disability for calculation of benefits.  *Id.*

Oral argument was conducted in this matter, by telephone, on February 10, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the

correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>Whether Remand is Warranted</u>

While plaintiff raises multiple arguments in this action, at the forefront is her contention that the ALJ failed to remedy the errors identified in my previous decision that resulted in remand, namely that the ALJ again failed to appropriately explain his neglect to include limitations in the RFC regarding plaintiff's inability to attend on a consistent basis and perform at an acceptable work pace despite every medical opinion in the record supporting such limitations.  Dkt. No. 18.  Plaintiff argues that this error is compounded in this instance because there is even more opinion evidence to support such limitations than there was at the time of the ALJ's first decision, and yet the ALJ again failed to show that his conclusion – which is contrary to all of the opinion evidence – is overwhelmingly compelling as required by the governing caselaw.  The Commissioner argues that the ALJ's finding regarding the extent of limitations is supported by substantial evidence, although she concedes that the ALJ "did not properly explain his treatment of Dr. Brennan's opinion," and that such error constitutes a

ground for remand.  Dkt. No. 23.  Ultimately, the parties disagree over the scope of remand, and specifically whether it should be with a directed finding of disability and for calculation of benefits, or instead for further proceedings.

As to the issue of whether remand is warranted, I agree with the parties that it is.  Quite simply, the ALJ did not do what he was instructed to in my previous remand order.  In that previous order, I recognized that every medical source to render an opinion in this case – at the time including non-examining state agency consultant Dr. T. Harding; LCSW Kathleen DiFulvio-Kaeplinger, who completed a mental health questionnaire based upon an examination of the plaintiff and a review of records, and Dr. Melissa Couch, who co-signed that report; treating source Dr. John Welch; consultative examiner Dr. Amanda Slowik; and Dr. Adam Krantweiss, who conducted a psychological examination of the plaintiff – opined at least moderate limitations in the relevant areas of functioning related to plaintiff's ability to work at pace and/or adhere to a routine work schedule on a consistent basis.  AT 544-45.  Based upon my review of the record, I found that, because the opinions unanimously supported significant limitations in this respect, the ALJ was required to show that his contrary finding was supported by overwhelmingly compelling evidence,

and that he failed to make that showing.  AT 545.  I further noted that,

specifically as to Dr. Slowik, who opined a marked limitation in plaintiff's

ability to maintain a regular schedule and to whose opinion the ALJ

accorded great weight, the ALJ completely failed to reconcile that great

weight finding with his failure to account for that opined marked limitation.

AT 545.

On remand the ALJ found, in relevant part, that plaintiff is capable of

performing simple, routine, and repetitive tasks with no production rate or

pace work, a low stress job defined as occasional decision-making,

occasional changes in work setting, and occasional judgement, and

occasional interaction with the public, coworkers, and supervisors.  AT 460.

When compared with his previous RFC for low stress work defined as

involving occasional decision-making, changes in work setting and

judgment, and occasional interaction with coworkers, supervisors, and the

public, in the decision under review the ALJ only additionally limited plaintiff

to (a) simple, routine, and repetitive tasks and (b) no production rate or

pace work.  AT 21, 460.

The additional limitations set forth in the most recent decision by ALJ

Fein do not account for the opined limitations regarding plaintiff's ability to

maintain a schedule.  Notably, despite my specific finding that the ALJ

14

erred by not reconciling his decision to afford great weight to Dr. Slowik's

opinion with his failure to adopt Dr. Slowik's marked limitation in

maintaining a schedule, the ALJ again afforded great weight to the entirety

of that opinion and yet once again failed to explain why he chose not to

account for this limitation.  AT 461.  The ALJ's conclusory statement that he

"fully accounted for the moderate to marked restrictions Dr. Brennan, Dr.

Slowik, and Dr. Harding identified in restricting claimant to simple work

without any production rate pace work in a low stress environment with

occasional social interaction" does not satisfy his duty to explain his

decision in this respect, inasmuch as none of those limitations directly

address the ability to maintain a schedule.  Even reading the ALJ's decision

as a whole, as am I required to do, it does not provide a sufficiently clear

indication regarding his unexplained justification for implicitly rejecting this

portion of Dr. Slowik's opinion to provide a basis for meaningful judicial

review.

    I note further that the ALJ failed to properly explain the weight he

afforded to the more recent opinion from medical expert Dr. Jewel Emily

Brennan.  Because plaintiff filed her applications in this case in 2015, this

matter is subject to the former regulations related to opinion evidence and

the "treating physician rule."  Under the former regulations, an ALJ was

required to consider what degree of weight to which an acceptable medical source's opinion is entitled by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019); *see also Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  The prior regulations specifically provided that the ALJ must evaluate every medical opinion and must consider all of these factors when deciding what weight to give to any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Although under the former regulations, the ALJ was required to explicitly consider all of these factors, the failure to do so would be deemed harmless if a "searching review of the record assure[d] [the court] that the substance of the treating physician rule was not traversed."  *Estrella*, 925 F.3d at 95-96.

In affording partial weight to the opinion of medical expert Dr. Brennan, the ALJ noted that Dr. Brennan was a non-examining physician who had the opportunity to review the entirety of the record and had a specialty in psychology, as well as experience and knowledge of the Social Security disability program, but found her opinion was not entitled to greater weight because her opinion that plaintiff would be absent from work

16

or require a job coach were speculative and contradicted by plaintiff's range of daily activities such as caring for her children without episodes of decompensation or assistance from a government agency.  AT 461.  It is not apparent that the ALJ considered whether Dr. Brennan's opinion was consistent with the objective medical or other evidence beyond plaintiff's reported daily activities, as he was required to pursuant to the governing law.  It is also not apparent what specific portions of Dr. Brennan's opinion to which the ALJ was intending to afford partial weight; there are certainly portions of her testimony, beyond her statements regarding the need to be absent from work and the need for a job coach, that would be inconsistent with the ALJ's RFC finding, particularly, as defendant candidly acknowledges, Dr. Brennan's indication that she agrees with Dr. Krantweiss' opinion regarding plaintiff being unable to meet competitive standards in her ability to maintain regular attendance and be punctual, complete a normal workday or workweek, or deal with normal work stress.  AT 409, 498.  Dr. Brennan also testified that, because plaintiff experiences a documented physiological response, including chest pain and sweating, during panic attacks, it would be "very hard for her to function" during those episodes, a fact that would seemingly have implications related to plaintiff's ability to remain on-task and maintain a schedule.  Yet the ALJ did not

indicate whether he accepted or rejected this portion of Dr. Brennan's opinion.  The ALJ's failure to appropriately assess the *Burgess* factors and even to indicate upon what specific portions of Dr. Brennan's opinion he was intending to rely renders it near impossible to meaningfully review the ALJ's assessment of Dr. Brennan's opinion.

I note again, as I did previously, that every physician who rendered an opinion found some significant degree of limitation in plaintiff's abilities to report to and attend work on a consistent basis:

| Date | Source | Perform within a schedule and/or maintain regular attendance | Complete a normal workday or workweek without interruption from symptoms | Absences per month | Off-task time |
|------|--------|------|------|------|------|
| May 21, 2013 | LCSW DiFulvio-Kaepplinger and Dr. Melissa Couch | Marked | Extreme | More than three days | |
| Jan. 23, 2015 | Dr. John Welch | Moderate | Marked | More than three days | |
| Apr. 15, 2015 | Dr. Amanda Slowik | Marked | | | |
| Apr. 17, 2015 | Dr. T. Harding | Not significantly limited | Moderate | | |
| Mar. 7, 2017 | Dr. Adam Krantweiss | Unable to meet competitive standards | Unable to meet competitive standards | More than four days | |
| May 6, 2020 | Dr. Nahid Borogerdi, Ph.D/FNP-C | Moderate | | Three or more days | More than thirty-three percent of |

| | | | | | the workday |
|---|---|---|---|---|---|
| June 9, 2020 | Dr. Jewel Brennan | Unable to meet competitive standards | Marked | "Once a week or several times a month" | |

Despite this, the ALJ failed to either adopt a corresponding limitation in the RFC or to clearly provide an explanation supported by overwhelmingly compelling evidence to justify that omission.  A circumstantial critique by the ALJ, as a non-physician, "however thorough or responsible, must be overwhelmingly compelling to justify a denial of benefits."  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 861 (2d Cir. 1990)).  The ALJ's errors in failing to reconcile affording great weight to both Dr. Slowik and Dr. Harding with his decision not to adopt any limitation in the RFC finding related to maintaining a schedule or completing a workday or workweek, and his failure to properly explain the weight he afforded to Dr. Brennan's opinion render his overall decision unsupported by substantial evidence.  Accordingly, I once again find that remand is necessary.

      2.   <u>The Scope of Remand</u>

As was noted at the outset, the parties disagree as to the scope of the remand to be ordered.  "Sentence four of Section 405(g) provides

district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]).  The Second Circuit has indicated that, where there are gaps in the administrative record or the ALJ has applied an improper legal standard, remand for further development of the evidence is warranted.  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted).  Thus, remand for further administrative proceedings is the overwhelmingly preferred course where the administrative record contains gaps and further findings would "plainly help to assure the proper disposition" of the claim. *Glass v. Colvin*, 12-CV-1332, 2014 WL 5361471, at *6 (N.D.N.Y. Oct. 21, 2014) (Young, J.) (citing *Butts*, 388 F.3d at 385).  If, however, "the record contains persuasive proof of disability, and a remand for evidentiary proceedings would serve no useful purpose," reversal for calculation of benefits is appropriate.  *Harry L. v. Comm'r of Soc. Sec.*, 18-CV-0282, 2019 WL 3937224, at *5 (N.D.N.Y. Aug. 5, 2019) (Baxter, M.J.) (citing *Rosa*, 168 F.3d at 82-83).

After carefully considering the full context of this case and the evidence, I find that a directed finding of disability with remand for calculation of benefits is warranted.  Although the various opinion sources

are perhaps not fully consistent in the degrees to which they found plaintiff

to be limited in her abilities to perform within or adhere to a schedule,

maintain regular attendance, and complete a normal workday or workweek,

they all uniformly opine at least moderate restrictions in at least one of

these areas, and most of the sources opine limitations in at least one of

these areas that would be clearly work-preclusive.  Additionally, every

source who specifically offered an opinion on the number of absences

plaintiff would experience in a typical month opined an amount of absences

that would be work-preclusive according to the vocational expert's

testimony.  AT 508-09 (vocational expert testifying that two or more

absences per month would preclude gainful employment).

At oral argument, the Commissioner hinged her argument on fact that

Dr. Harding findings that plaintiff was only moderately limited in her ability

to complete a normal workday or workweek, but was not significantly

limited in her ability to perform within a schedule and *maintain regular

attendance* and that she remained able to perform unskilled work implicitly

constitute an opinion that plaintiff would not have a work-preclusive number

of absences.   However, such implication is insufficient to contradict the

wealth of consistent, more specific opinions from the other treating,

examining, and non-examining sources.  As the Second Circuit recently

recognized, a source's assessment of "moderate," "marked" or other non-specific terms regarding limitations in certain areas does not necessarily "address or dispute" an opinion that a claimant requires a specific amount of time off-task or absent, particularly in the context of an "invisible" impairment – in that case, headaches – where outward appearance at examinations does not necessarily correlate to inward experience.  *Colgan v. Kijakazi*, 22 F.4th 353, 364 (2d Cir. 2022).  Although appreciating the Commissioner's argument, I find that Dr. Harding's opinion is not sufficient evidence to refute the otherwise uncontradicted opinions of every other physician who opined a specific number of monthly absences they believed the plaintiff would require.  These consistent opinions, provided by multiple sources with varying degrees of interaction with plaintiff and varying degrees of familiarity with the record in this case, including a medical expert who reviewed all the relevant evidence, constitute persuasive proof of disability.

I note also that further proceedings would serve no useful purpose. The ALJ has twice failed to properly account for the marked limitation by Dr. Slowik related to maintaining a schedule, a limitation that generally supports the overall findings of the other physicians that plaintiff would require a work preclusive number of absences.  As to the ALJ's errors in

weighing Dr. Brennan's opinion, no useful purpose would be served by

allowing a new ALJ to assess this opinion. The ALJ's rationale for rejecting

the limitation related to absences in Dr. Brennan's opinion was because it

was believed to be speculative and contradicted by plaintiff's range of daily

activities such as caring for her children without episodes of

decompensation or assistance from a government agency.  However, the

fact that Dr. Brennan's opinion regarding absences is consistent with every

other source who rendered a specific opinion on that issue – and indeed

her opinion was based on those opinions and her own expert review of the

evidence – squarely and incontrovertibly undermines the ALJ's finding that

this portion of her opinion was merely speculative.  The remaining reason

that it is inconsistent with her ability to care for her children is simply

insufficient to provide the overwhelmingly compelling justification that would

be required.  Nor am I convinced after reviewing the record that an ALJ

would be able to provide such an overwhelming compelling justification,

based on the fact that the rationale the ALJ provided for rejecting those

same absence limitations in the opinions from the other sources was that

they were inconsistent with the fact that plaintiff displayed normal mental

status on examinations.  AT 463.  Given that plaintiff suffers first and

foremost from a mental impairment – which type of impairment the Second

Circuit has recognized is not always amenable to assessment through objective findings alone – I can foresee no way in which the ALJ could justify rejecting the consistent opinion evidence regarding absences that would not be based on a substitution of his or her own lay assessment of the medical evidence over the opinions of the multiple physicians that either had a treatment or examining relationship with plaintiff on which to base their opinion, or who, in the case of Dr. Brennan, was a medical source who reviewed all of the evidence in the context of her medical expertise. *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7 (2d Cir. 2020) (noting that cases involving mental health impairments "tend to be less susceptible to objective testing and assessment").

For the reasons stated above, I find that this matter should be remanded for a directed finding of disability and solely for the calculation of benefits.

IV.   <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 18) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 23) be DENIED, the Commissioner's decision be REVERSED, and this matter remanded, with a directed finding of disability, solely for the purpose of calculating benefits owing to plaintiff, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      February 17, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge